**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherri Strole, | No. CV-24-08211-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Mark Wirth, et al., | |
| Defendants. | |

*Pro se* Plaintiff Sherri Strole ("Plaintiff") has filed an Application to Proceed in District Court Without Prepaying Fees or Costs. (Doc. 2). Upon review, Plaintiff's Application, signed under penalty of perjury, indicates that she is financially unable to pay the filing fee. The Court will therefore grant Plaintiff's Application and allow her to proceed *in forma pauperis* ("IFP").

Plaintiff has also filed a Motion to Compel Arbitration, a Motion for "Permanent Anonymity," and a Motion to Compel wherein she requests an Order granting her IFP application and reopening closed cases not before this Court. (Docs. 5–6, 8). The Court will proceed to screen Plaintiff's Complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2).

**I.   Background**

Plaintiff states that she moved to Defendant Fairgrounds RV LLC's RV park in January of 2023. (Doc. 1 at ¶ 6). She alleges that she has experienced "a continuous pattern of harassment, discrimination, and intimidation by Defendants' management, staff, and other tenants." (*Id.* at ¶ 7). She specifically alleges that she was subject to the following

acts:

> (A) Arbitrary rent increases without proper notice, inconsistent billing practices, and refusal to provide invoices and contract copies upon request.
>
> (B) Discriminatory enforcement of park policies, including requirements to elevate sewer hoses and complete repairs, which were not applied to other tenants.
>
> (C) Repeated acts of vandalism to Plaintiff's RV, vehicle, and personal property, including tampering with water connections, locks, and sewer equipment, creating unsafe and unsanitary living conditions.
>
> (D) Isolation from community events and refusal by management to address or investigate Plaintiff's complaints, leaving her subject to ongoing harassment by other tenants.

(*Id.*) Due to the above alleged conduct, Plaintiff has brough claims against Defendants for: (1) gender discrimination in violation of the Fair Housing Act ("FHA") (42 U.S.C. § 3604); (2) retaliation and intimidation in violation of the FHA; (3) economic abuse and (4) intentional infliction of emotional distress ("IIED"). (*Id.* at ¶¶ 11–19).

## II.    Legal Standard

When a party has been granted IFP status, the Court must review the complaint to determine whether the action:

  (i)    is frivolous or malicious;

  (ii)   fails to state a claim on which relief may be granted; or

  (iii)  seeks monetary relief against a defendant who is immune from such relief.

*See* 28 U.S.C. § 1915(e)(2)(B).[1]  In conducting this review, "section 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

Federal Rule of Civil Procedure 8(a) requires complaints to make "a short and plain

---

[1] "While much of § 1915 outlines how prisoners can file proceedings *in forma pauperis*, § 1915(e) applies to all *in forma pauperis* proceedings, not just those filed by prisoners." *Long v. Maricopa Cmty. Coll. Dist.*, 2012 WL 588965, at *1 (D. Ariz. Feb. 22, 2012) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints[.]"); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.") (citation omitted). Therefore, section 1915 applies to this non-prisoner IFP Complaint.

statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, 'the defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. The Court is mindful that it must "construe pro se filings liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

**III. Discussion**

Plaintiff has brought this action against Defendants Mark Wirth, Fairgrounds RV, LLC, and Orchard Ranch Park, LLC. (Doc. 1 at 1). Plaintiffs' purport to bring claims for FHA Gender Discrimination, Retaliation and Intimidation as well as Economic Abuse and an IIED claim. (*Id.* at ¶¶ 11–19). The Court will screen each claim in turn.

---

[2] "Although the *Iqbal* Court was addressing pleading standards in the context of a Rule 12(b)(6) motion, the Court finds that those standards also apply in the initial screening of a complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A since *Iqbal* discusses the general pleading standards of Rule 8, which apply in all civil actions." *McLemore v. Dennis Dillon Auto. Grp., Inc.*, 2013 WL 97767, at *2 n.1 (D. Idaho Jan. 8, 2013).

### A. The FHA

Plaintiff asserts that Defendants violated the FHA numerous times during her residency at the Fairgrounds RV Park. Specifically, she brings three separate FHA claims: discrimination, interference, and retaliation. The Court will begin by screening Plaintiff's claim for discrimination in violation of the FHA.

#### 1. FHA Sex Discrimination

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, *sex*, familial status, or national origin." 42 U.S.C. § 3604(b) (emphasis added). The Ninth Circuit applies the Title VII discrimination analysis in evaluating FHA claims. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (citation omitted). FHA discrimination claims may be established "under a theory of disparate treatment or disparate impact." *Id.* (citation omitted).

To state a *prima facie* FHA discrimination claim under a disparate impact theory, a plaintiff must allege the following: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). A Plaintiff must also "establish that the defendant had a discriminatory *intent or motive*." *Ohio House, LLC v. City of Costa Mesa*, 122 F.4th 1097, 1115 (9th Cir. 2024) (quoting *Tex. Dep't of Hous. & Community Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015) (emphasis added).

A disparate-impact theory "prohibits actions that 'create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason.'" *Ohio House*, 122 F.4th at 1120 (quoting *S.W. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 962 (9th Cir. 2021)). "In other words . . . disparate-impact claims—unlike disparate-treatment claims—focus on the consequences of actions and not just [ ] the mindset of actors." *Id.* (internal citations and quotations omitted). To state a *prima facie* disparate impact claim, a plaintiff must allege:

"(1) the existence of a policy . . . that is outwardly neutral; (2) a significant, adverse, and disproportionate effect on a protected class; and (3) robust causality that shows, beyond mere evidence of a statistical disparity, that the challenged policy, and not some other factor or policy, caused the disproportionate effect." *Id*. (citation omitted). A Plaintiff must also allege "an adverse and disproportionate impact." *Id*.

Plaintiff alleges that she has suffered "[d]iscriminatory enforcement of park policies, including requirements to elevate sewer hoses and complete repairs, which were not applied to other tenants" as well as discriminatory practices by "imposing different lease terms and conditions on her compared to male tenants, denying her equal access to park amenities, and excluding her from community activities." (Doc. 1 at ¶¶ 7–8). She further alleges that Defendants "discriminated against [her] on the basis of her gender by imposing disparate lease terms, failing to address or prevent harassment, and denying her the same rights and privileges afforded to other tenants." (*Id*. at ¶ 12).

As pled, the Court finds that Plaintiff's FHA sex discrimination claim is plausible on its face under a disparate treatment theory. She has alleged that she is a woman who has been denied "the same rights and privileges afforded to other tenants." (Doc. 1 at ¶ 12). She has also alleged that Defendants have "subjected Plaintiff to discriminatory practices by imposing different lease terms and conditions on her compared to male tenants." (*Id*. at ¶ 8). She states that "[a]s a direct result of Defendants' discriminatory practices, Plaintiff has suffered emotional distress, property damage, and loss of enjoyment of her living environment." (*Id*. at ¶ 13). Finally, she has alleged that the "nature and persistence of these actions are such that they appear intended to coerce, intimidate, and ultimately force Plaintiff out of the RV park due to her gender." (*Id*. at ¶ 10). These allegations, when accepted as true and construed liberally, state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Harris*, 183 F.3d at 1051.

### 2. FHA Retaliation

An FHA retaliation claim "is analogous to the more-familiar situation of a retaliatory failure-to-hire in the Title VII and First Amendment contexts." *Ohio House*,

122 F.4th at 1125. "And, as with Title VII retaliatory action claims, an FHA retaliation claim hinges on the *plaintiff's actions* that preceded the defendant's actions." *Id*. (citing *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 868 (7th Cir. 2018) ("Like all anti-retaliation provisions, [§ 3617, when invoked to pursue an FHA retaliation claim] provides protections not because of who people are, but because of what they do.")). "Simplistically, a retaliation theory asserts: because A did this, B did that to A." *Id*.

To make out a prima facie case of retaliation under the FHA, a plaintiff must allege that: (1) they engaged in a protected activity, (2) an adverse housing consequence casually linked to that activity and (3) resulting damage. *See Hall v. Meadowood Ltd. P'ship*, 7 F. App'x 687, 689 (9th Cir. 2001) (citing *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998)).

Here, Plaintiff asserts that Defendants have "engaged in retaliatory actions against Plaintiff for raising complaints about discrimination and harassment, including ignoring her reports, charging different rent or fees than other tenants and imposing conditions designed to create a hostile and intolerable living environment." (Doc. 1 at 15). She also alleges that "Defendants' retaliatory actions have caused Plaintiff to suffer emotional and physical harm, loss of personal property, and ongoing intimidation and humiliation." (*Id*. at ¶ 16). These allegations, when accepted as true and construed liberally, state an FHA retaliation claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Hall*, 7 F. App'x at 689.

### 3. FHA Interference

The FHA provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605 or 3606 of this title." 42 U.S.C. § 3617. The language of the FHA is to be interpreted in a broad and inclusive manner. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001). Unlawful interference occurs when a defendant "meddl[es] in or hamper[s] an activity or process" protected by the FHA. *Id*. (citation omitted). Section 3617 "does not

1  require a showing of force or violence for coercion, interference, intimidation, or threats to
2  give rise to liability." *Id*. at 1128. "'[A] 'threat' is 'an expression to inflict evil, injury, or
3  other damage on another.'" *Id*. at 2382 (internal citations omitted). Section 3617 is
4  implicated where "the fundamental inequity of a discriminatory housing practice is
5  compounded by coercion, intimidation, threat or interference." *Smith v. Stechel*, 510 F.2d
6  1162, 1164 (9th Cir. 1975).

7  The Ninth Circuit applies "the *McDonnell Douglas* burden-shifting framework to
8  FHA-interference claims and first 'requires the plaintiff to establish a prima facie case by
9  showing that (1) he was engaged in protected activity; (2) he suffered an adverse action;
10 and (3) there was a causal link between the two.'" *Ohio House*, 122 F.4th at 1125 (quoting
11 *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)).

12 Plaintiff relies on the same allegations to support her retaliation and intimidation
13 claims: that Defendants ignored her complaints, charged her different rent or fees than
14 other tenants and imposed conditions designed to create a hostile and intolerable living
15 environment in retaliation to Plaintiff's complaints. (Doc. 1 at ¶ 15). Aside from these
16 allegations, Plaintiff also alleges that Defendants denied her equal access to park amenities
17 and excluded her from community activities. (*Id*. at ¶ 8). Plaintiff further alleges that
18 Defendants acts were designed to intimidate her out of the RV park. (*Id*. at ¶ 10).

19 Plaintiff's allegations, when accepted as true and construed liberally, also state an
20 FHA interference claim for relief that is plausible on its face. *See Ohio House*, 122 F.4th
21 at 1125; *see also Manzo v. Hall Vineland Prop., LLC*, 2012 WL 608403, at *4 (N.D. Cal.
22 Feb. 24, 2012) ("A reasonable jury could conclude that the notices of rent increase and
23 subsequent **rent increases were acts of interference**, coercion, threat, or intimidation.")
24 (emphasis added).

25 **B.    Intentional Infliction of Emotional Distress**

26 Plaintiff finally advances a claim for Economic Abuse and Intentional Infliction of
27 Emotional Distress. (Doc. 1 at ¶¶17–19). The law does not recognize an "economic abuse"
28 claim, so, the Court will construe this claim as an IIED claim only.

Under Arizona law, the tort of IIED requires proof of three elements: " '[F]irst, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.' " *Demetrulias v. Wal-Mart Stores Inc.*, 917 F.Supp.2d 993, 1012 (D. Ariz. 2013) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (1987)) (citing Restatement (Second) of Torts § 46(1) (1965)). "The adjectives 'extreme' and 'outrageous' are not just for show; evidence of [mere] callousness or insensitivity will not suffice." *Id*. (citation omitted).

On the first element, "[t]he 'conduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct.' " *Matson v. Safeway*, 2013 WL 6628257, at *4 (D. Ariz. Dec. 17, 2013) (quoting *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258 (1980)). To satisfy this element, "[t]he plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Demetrulias*, 917 F.Supp.2d at 1012 (citations omitted). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1003 (D. Ariz. 2004) (quoting *Lucchesi v. Stimmell*, 716 P.2d 1013, 1016 (Ariz. 1986). Because the terms "outrageous conduct" and "severe emotional distress" evade precise legal definition, courts in Arizona analyze these elements on a case-by-case basis. *See id*. "One factor used by courts to analyze these terms is the 'position occupied by the defendant.' " *Id*. (quoting Restatement (Second) of Torts § 46).

Under her IIED claim, Plaintiff alleges that "[t]hrough arbitrary billing practices, refusal to provide invoices or contract, and enforced repairs not required of other tenants, Defendants have engaged in economic abuse against Plaintiff, causing her financial harm and hardship." (Doc. 1 at ¶ 18). She also alleges that "Defendants' intentional actions in

creating hostile living conditions, combined with their dismissive and retaliatory conduct, were intended to inflict emotional distress upon Plaintiff, resulting in significant mental anguish, anxiety, and harm." (*Id.* at ¶ 19). Plaintiff has not alleged facts that Defendants actions were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Demetrulias*, 917 F.Supp.2d at 1012. Rather, she has only alleged conduct that is merely callous or insensitive—which cannot support an IIED claim. *See id.* Thus, Plaintiff has failed to state an IIED claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

However, the Court will allow Plaintiff leave to amend this claim if she wishes to do so. In accordance with the well-settled law in this Circuit, because "it is not 'absolutely clear' that [Plaintiff] could not cure [the Complaint's] deficiencies by amendment," the Court will give her the opportunity to do so. *See Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); *see also Lopez*, 203 F.3d at 1131 (en banc) (internal quotation marks and citations omitted) (holding that a pro se litigant must be given leave to amend his complaint "if it appears at all possible that the plaintiff can correct the defect" in the complaint). The Court will dismiss Plaintiff's IIED claim and allow her to file a first amended complaint within **thirty (30) days** from the date of entry of this Order. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely" given "when justice so requires[]").

If Plaintiff wishes to file an amended complaint, she should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. There are examples of different types of complaints in the Federal Rules of Civil Procedure's Appendix of Forms (forms 1–15).[3] Plaintiff must clearly designate, on the face of the document, that it is the "First Amended Complaint." This complaint must be **retyped in its entirety** and may not incorporate any part of the original Complaint by reference.

The Court also recommends that Plaintiff review the information available in the

---

[3] Those forms, the Federal Rules of Civil Procedure, and the Local Rules, as well as other information for individuals filing without an attorney, may be found on the District Court's internet web page: www.azd.uscourts.gov/.

District Court's Handbook for Self-Represented Litigants, which is available online.[4] Plaintiff should be aware that "an amended complaint supersedes the original complaint and renders it without legal effect[.]" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Thus, after amendment, the Court will treat an original complaint as nonexistent. *Id.* at 925.

### C. Plaintiff's Other Outstanding Motions

Plaintiff has also filed a Motion to Compel Arbitration, a Motion for "Permanent Anonymity," and a Motion to Compel wherein she requests an Order granting her IFP application and reopening closed cases not before this Court. (Docs. 5–6, 8). The Court will deny these Motions for the reasons set forth below:

As for Plaintiff's Motion to Compel Arbitration (Doc. 5), the Court must deny this Motion as Plaintiff has not attached the alleged arbitration agreement between the parties to its Motion. So, the Court cannot glean whether there is a valid arbitration agreement to enforce. However, the Court will allow Plaintiff to refile this Motion once Defendants have been served.

Next, the Court will also dismiss Plaintiff's Motion for "Permanent Anonymity." (Doc. 6). There, she seeks an Order "to shield [her] identity and personal information from public disclosure" generally and issue her new identification documents, including a new social security number. (*Id*. at 2). She also seeks "comprehensive relocation and witness-like protections" including "secure relocation to a gated, quiet neighborhood with robust security measures" and "[o]ngoing law enforcement coordination in the new jurisdiction to ensure Plaintiff, all property and animals safety." (*Id*. at 3). Plaintiff's requests are not within the Court's power to grant, so the Court will deny the Motion.

Finally, Defendant makes a plethora of requests in her "Motion to Compel." (Doc. 8). She specifically asks that the Court reopen closed cases in different courts or in front of other judges of this court, "ensure proper service," and "direct all relevant government entities to work collaborate to address her various claims. (*Id*. at 3–4). Most

---
[4] The Handbook may be found at http://www.azd.uscourts.gov/handbook-self-represented-litigants.

of Plaintiff's requests are not actionable, such as reopening closed cases in front of other judges and state courts. *See e.g., Mahoney v. Valdez*, 2024 WL 2300456, at *2 (D. Ariz. May 21, 2024) ("federal district courts generally lack jurisdiction to review a final state court decision.").

However, the Court will Order that service be made on Defendants by a United States Marshal or deputy marshal because Plaintiff has been authorized to proceed IFP. *See* Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that service be made by a United States Marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915 or as a seaman under 28 U.S.C. §1916.").

**IV.     Warning**

If Plaintiff fails to prosecute this action, or if she fails to comply with the rules or any court order, the Court may dismiss the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b). *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Accordingly,

**IT IS ORDERED** that Plaintiff's Third Count for Intentional Infliction of Emotional Distress is **DISMISSED** without prejudice. The remaining counts are: Count I for FHA discrimination and Count II for FHA retaliation and intimidation. If Plaintiff attempts to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety (including those claims that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Arbitration (Doc. 5) is **DENIED** without prejudice to refile after Defendants have been served.

**IT IS FURTHER ORDERED** that the Motion for Permanent Anonymity (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion to Compel (Doc. 8) is

**GRANTED** in part and **DENIED** in part. The Court will grant her request for service by a United States marshal. Her other requests are denied, as stated herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send Plaintiff a service packet including her Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Mark Wirth, Fairgrounds RV LLC and Orchard Ranch Park LLC. Plaintiff must complete and return the service packet to the Clerk of Court within 30 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

**IT IS FURTHER ORDERED** that if Plaintiff does not either obtain a waiver of service of the summons or complete service on Defendants within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

**IT IS FURTHER ORDERED** that the United States Marshal must retain the Summons, a copy of Plaintiff's Complaint, and a copy of this Order for future use. The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. If Defendants agree to waive service of the Summons and Complaint, they must return the signed waiver form to the United States Marshal, not the Plaintiff, within 30 days of the date of the notice and request for waiver of service under Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

**IT IS FINALLY ORDERED** that the United States Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendants within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must: (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and (b) within 10 days after personal service is affected, file the return of service for Defendants, along with evidence of the

attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

Dated this 3rd day of April, 2025.

Honorable Diane J. Humetewa
United States District Judge